UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LYNETTE CHYRIE STEWART                    CIVIL ACTION

VERSUS                                    NO: 13-823

DWIGHT J. CATON, et al.                   SECTION: "J" (2)

## ORDER AND REASONS

Before the Court are Defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) (Rec. Doc. 20)**, Plaintiff's opposition thereto (Rec. Doc. 27), and Defendants' reply (Rec. Doc. 31). Defendants' motion was set for hearing on August 14, 2013, with oral argument; however, the oral argument was cancelled (Rec. Doc. 32), and the motion was considered on the briefs. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendants' motion should be **GRANTED in part and DENIED in part** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This case arises out of allegations of sex discrimination

1

and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Louisiana Revised Statute § 23:301 *et seq*. ("Louisiana Employment Discrimination Law") as well as various state law claims including intentional and negligent infliction of emotional distress and battery. Plaintiff, Lynette Chyrie Stewart ("Stewart"), was an employee of Defendant, Modern American Recycling Service, Inc. ("Modern"). While employed at Modern, Stewart alleges that her supervisor, Defendant, Dwight "Butch" Caton ("Caton"), sexually harassed her by pulling up her blouse, touching her breasts, and making repeated comments regarding both Stewart's and her daughter's breasts.[1] As a result, Stewart claims to have suffered extreme anxiety and distress so as to necessitate medical treatment. Caton is the owner and registered agent of Modern.

Stewart filed a charge of sexual discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 28, 2012. Despite a clean employment record, Stewart's employment with Modern ended on November 29, 2012; however, the parties

---

[1] Examples of the comments that Plaintiff alleges were made are: calling Plaintiff a "cow", telling Stewart to "come on over here, I'm bored...it's boob playing time when I'm bored," and referring to Stewart's breasts as "utters [sic]" and/ or "big old titties." (Pl.'s Compl., Rec. Doc. 1, ¶¶ 10, 37, & 45) A third party salesman also affirms that Caton initially identified Stewart to him by calling her the "big titted blond" and referred to Stewart as "cow tits." (Dec. of Tony Serventi, Rec. Doc. 1-9, ¶¶ 2-3)

dispute whether Stewart voluntarily ended her employment or was terminated. Stewart filed another EEOC charge for retaliation on December 3, 2012. The EEOC issued to Stewart a notice of right to sue on February 14, 2013. Stewart filed her complaint on April 15, 2013, against Caton, individually and in his supervisory capacity, and Modern's insurer, ABC Insurance Agency (collectively, "Defendants"). Stewart later amended her complaint to add Modern as a defendant. After being granted additional time to answer Stewart's complaint, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 21, 2013. Plaintiff filed her opposition to the motion to dismiss on July 23, 2013. Defendants filed a reply memorandum on August 9, 2013.

## PARTIES' ARGUMENTS

### A. Defendants' Argument

Defendants argue that all of Stewart's claims must be dismissed. Defendants assert that all claims under the Louisiana Employment Discrimination Law must be dismissed because Modern does not qualify as an employer under the statutory definition. The Louisiana Employment Discrimination Law defines an "employer" as "an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar

3

weeks in the current or preceding calendar year." La. R.S. 23:302(2) (West 2012). Defendants assert that Modern never employed twenty or more employees, and points out that Stewart herself recognized this in the EEOC charge sheet wherein she stated that Modern only employed seventeen employees plus independent contractors.

Defendants further argue that Stewart's Title VII claims must be dismissed because (a) Caton may not be held personally liable under Title VII, and (b) the alleged conduct is not sufficiently severe and pervasive so as to constitute a hostile work environment.

Defendants argue that, under Indest v. Freeman Decorating, Inc., 164 F.3d 258 (5th Cir. 1999), "a Title VII suit against an employee is actually a suit against the corporation." Therefore, Defendant argues that all Title VII claims should be dismissed as to Caton. Defendants assert that all claims of discrimination based on sex should be dismissed because Stewart fails to state a claim of sexual harassment. Citing to Lauderdale v. Texas Dept. of Criminal Justice, Institutional Division, 512 F.3d 157 (5th Cir. 2007), Defendants aver that one of the elements of a prima facie case of hostile work environment is "that the harassment affected a term, condition, or privilege of employment." To make

4

this showing, Defendants argue that Stewart must allege conduct that is "sufficiently severe or pervasive" and that the work environment is "both objectively and subjectively offensive" under Aryain v. Wal-Mart Stores of Texas, LP, 534 F.3d 473 (5th Cir. 2008). Defendants cite to a litany of cases to argue that the conduct alleged by Stewart is not sufficiently severe or pervasive to be actionable, and therefore should be dismissed.

**B. Stewart's Opposition**

Stewart notes that she brings her Title VII claims against Modern, not against Caton individually. Stewart argues that Modern is liable for the hostile work environment that was created because, under Ackel v. National Communications, Inc., 339 F.3d 376, 383-84 (5th Cir. 2003) an employer is vicariously liable if the harassing employee is a proxy for the employer. Because Caton is owner of Modern and was Stewart's supervisor, Stewart contends that Caton was a proxy for Modern, which makes Modern vicariously liable under Title VII.

Stewart rejects Defendants' argument that Caton's conduct was not sufficiently severe and pervasive to constitute a hostile work environment. Stewart points out that much of the authority cited to by Defendants was either (a) taken out of context, (b) subsequently reversed, thus no longer valid law, or (c) not

contorlling, because it arises from jurisdictions outside of the Fifth Circuit, making it irrelevant and non-binding on this Court.

Stewart further argues that she has a valid Title VII claim against Modern for discrimination based on retaliation because she presents enough facts to establish a claim under Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001). Under Evans, Stewart asserts that she must show "(1) that she was engaged in behavior protected by statute, (2) that she was subject to adverse employment action, and (3) that engaging in the protected activity caused the adverse action against her." (Pl. Opp., Rec. Doc. 27, p. 12) Plaintiff contends that she engaged in a protected activity when she filed a charge with the EEOC, that she was terminated immediately, and that her filing of the charge caused her termination; therefore, she argues that she has stated a retaliation claim and the Title VII charges must not be dismissed.

Stewart contends that her state law claims should not be dismissed because (a) Modern employs over twenty employees, and (b) Stewart alleges state law claims other than the discrimination claim.

Stewart asserts that, even though Modern only employed 17

6

employees, under the Fifth Circuit's "single employer test," Modern and a different entity, Shore Enterprises ("Shore"), would be considered one employer, and together, they have more than 20 employees. Stewart contends that the Fifth Circuit established a four-prong test in Schweitzer v. Advanced Telemarketing Corporation, 104 F.3d 761 (5th Cir. 1997) to determine if two seemingly unrelated entities should be considered a single employer for the purposes of determining if an entity is covered by Title VII.  Plaintiff urges the Court to consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."  Plaintiff argues that she properly pleaded that there were seventeen Modern employees plus 300 other employees at Shore, and that Shore and Modern are acting as a common enterprise.  Stewart claims that Kristi Yates,[2] the owner of Shore, and Caton share an office, phones, servers, office building, and kitchen.  Stewart also contends that Shore "performs all of its services on behalf of and at the direction of" Modern. (Pl.'s Opp., Rec. Doc. 27, p. 14) Therefore, Stewart claims that Modern and Shore should be a

---

[2] Kristi Yates is also alleged to be the vice-president of Modern and the fiancée of Caton (Pl.'s Opp., Rec. Doc. 27, p. 3)

single employer for the purpose of counting employees, thus
Modern should be considered an "employer" under Louisiana Revised
Statute § 23:302(2).

Stewart further contends that the Fifth Circuit announced a
test in Arbaugh v. Y&H Corp., 380 F.3d 219, 226 (5th Cir. 2004),
for district courts to use in determining if an independent
contractor is an "employee" within the meaning of Louisiana
Revised Statute § 23:302. Stewart lists the following factors as
those that should be considered:

> (1) ownership of the equipment necessary to perform the
> job; (2) responsibility for costs associated with
> operating that equipment and for license fees and
> taxes; (3) responsibility for obtaining insurance; (4)
> responsibility for maintenance and operating supplies;
> (5) ability to influence profits; (6) length of the job
> commitment; (7) form of payment; and (8) directions on
> schedules and on performing work.

Arbaugh, 380 F.3d at 226. Stewart argues that under this test,
any worker at Shore or Modern would be considered an employee,
regardless of how they are purportedly classified by Modern.

Stewart argues that, since she has shown that Modern is an
"employer" within the statutory definition, and because the
substantive analysis under the Louisiana Employment
Discrimination Law is the same as the analysis under Title VII,
she has sufficiently stated a claim for discrimination under
state law.

8

Finally, Stewart argues that she has stated several state law tort claims. Stewart argues that, by alleging that Caton lifted her shirt and touched her breasts, she has pleaded enough facts to state a claim for battery, which requires a showing of "harmful or offensive contact with the person, resulting from an act intended to cause the plaintiff to suffer such a contact." (Pl.'s opp., Rec. Doc. 27, p. 15. (citing <u>Caudle v. Betts</u>, 512 So. 2d 389, 391 (La.1987)).

Stewart further alleges that, under <u>White v. Monsanto Co.</u>, 585 So. 2d 1205, 1209 (La. 1991), she states a claim for intentional infliction of emotional distress. <u>White</u> requires a showing

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

<u>Id</u>. Stewart stresses that sexual harassment in front of other co-workers and third parties is outrageous conduct, and that the distress she suffered was so severe that it required medical treatment. Further, Stewart asserts that it was clearly Caton's intent to cause such distress through sexual degradation; therefore, Stewart argues that her state law claim for intentional infliction of emotional distress should not be

9

dismissed.

Finally, Stewart argues that she at least states a claim for negligent infliction of emotional distress under <u>Duncan v. Bartholomew</u>, 2011-0855, (La. Ct. App. 4 Cir 2012); 88 So.3d 698, 707-08 which requires Stewart to prove that, as a result of Defendants negligence, she suffered a "mental disturbance accompanied by a physical manifestation of the distress such as illness or injury." (Pl.'s Opp., Rec. Doc. 27, p. 16) Stewart contends that she suffered physical manifestations of her distress that required medical treatment, and Defendant was clearly negligent; therefore, she has stated a claim for negligent infliction of emotional distress.

**C. Defendants' Reply**

In their reply brief, Defendants re-assert (a) that Caton may not be held personally liable under Title VII, and (b) that the alleged conduct is not sufficiently severe and pervasive to create a hostile work environment. Defendants also assert for the first time (a) that Caton cannot be held personally liable under the Louisiana Employment Discrimination Law because he does not fit the definition of an "employer", (b) that Stewart improperly applied <u>Schweitzer</u> to determine that Modern is an employer under the Louisiana Employment Discrimination Law, (c) that Stewart

cannot bring up new facts in her brief, such as her allegation that Shore and Modern are single employer because she did not include Shore as a Defendant in her EEOC charge or in her Complaints, (d) that Stewart may not claim that she was constructively discharged because she did not include that allegation in her EEOC charge and because she does not allege sufficient facts to support such a claim, (e) that Stewart's negligent infliction of emotional distress, as well as any other negligence claim, is barred because worker's compensation is the exclusive remedy for workplace negligence, and (f) that Stewart's complaint does not allege sufficient facts to allow Defendants to defend the suit, specifically that it provides no dates for the alleged conduct.

## <u>LEGAL STANDARD</u>

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must plead enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678.

<u>**DISCUSSION**</u>

**A.  Title VII Claims**

**1. Claims Against Caton Individually**

Defendants assert in their motion, and again in their reply memorandum, that Stewart cannot assert a Title VII claim against Caton individually either because Title VII does not impose liability on individuals or because Stewart did not include such a complaint in her EEOC charge. Stewart contends that she only asserts a Title VII claim against Modern, which she is allowed to do; therefore, the Court need not analyze Defendants' assertions

12

that Caton is not individually liable.

## 2. Claims Against Modern

A supervisor may be treated as a proxy for the employer. Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) (When "the individual charged with creating the abusive atmosphere was the president of the corporate employer [...the individual] was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy.") If a plaintiff alleges that such a proxy has created a hostile work environment, then the employer is vicariously liable, unless the employer may assert an affirmative defense. Id. at 807. The applicable affirmative defense is only available when the employer did not take a tangible employment action, "such as a discharge, demotion, or unreasonable assignment." Id. If the employer is entitled to the affirmative defense, the employer has the burden of proving that it took reasonable care to prevent and promptly correct any harassing behavior, but that the plaintiff unreasonably failed to take advantage of such opportunities or otherwise failed to avoid harm. Id.

Here, Stewart correctly argues that, because Caton is the owner of the corporate employer, Modern, his actions are imputable to Modern, and Modern will be vicariously liable unless

13

it can assert the affirmative defense. Modern did not make any arguments on this point, and Stewart alleged in her complaint that there was no harassment policy. Therefore, taking Stewart's allegations as true, it appears that Modern will not be able to satisfy the standard for the affirmative defense and will be vicariously liable for Caton's conduct, if it is determined to be actionable. Whether Stewart has pleaded sufficient facts to substantively state such a claim against Modern is treated below.

### a. Discrimination Based on Sex

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." Shepherd v. Comptroller of Pub. Accounts of State of Texas, 168 F.3d 871, 873 (5th Cir. 1999). Harassment is a form of discrimination affecting terms, conditions, and privileges of employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-64 (1986). There are two forms of harassment: quid pro quo and hostile work environment. See Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 409 (5th Cir. 2002). Stewart does not allege that Caton took a tangible employment action that was conditioned on sexual favors; therefore, Stewart does not have a claim for quid pro quo

harassment, despite the fact that she briefly mentions the term in her complaint. Id.

Stewart does, however, plead enough facts to state a hostile work environment claim. See Harris v. Forklift Sys. Inc., 510 U.S. 17, 22 (1993) (recognizing a Title VII claim for sex discrimination based on a hostile work environment theory). A claim for sex discrimination under a theory of hostile work environment exists when:

> (1) [the plaintiff] belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment (i.e., that the sexual harassment was so pervasive or severe as to alter her conditions of employment and create an abusive working environment); and (5) the employer knew or should have known about the harassment and failed to take proper action.

Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996).

The conduct complained of must be both subjectively perceived as abusive by the plaintiff and objectively hostile or abusive under a reasonable person standard. Harris, 510 U.S. at 21-22; Aryain, 534 F.3d. Harassment need not be severe *and* pervasive to be actionable, as many courts have found that a single, severe act was sufficient to create a hostile work

15

environment. <u>Harvill v. Westward Communications, L.L.C,</u>. 433 F.3d
428, 435 (5th Cir. 2005). In determining if conduct is "severe
and/or pervasive," the Court should consider the totality of the
circumstances, "including the frequency of the discriminatory
conduct, its severity, whether it is physically threatening or
humiliating, or a mere offensive utterance, and whether it
unreasonably interferes with an employee's work performance.
<u>Shepherd</u>, 168 F.3d at 874.

Defendants only challenge the objective component of the
analysis, arguing that Caton's conduct was not so severe or
pervasive so as to be actionable. Defendants cite to numerous
cases to illustrate this point, but as Stewart correctly points
out, many of the cases to which Defendants cite may not be relied
on because they come from jurisdictions outside of the Fifth
Circuit and/or have been overruled.[3] Moreover, all of the cases
discussed in both parties' briefs, including in Defendants' reply
memorandum, consider cases before the court on a motion for
summary judgment. Because the standard for granting such a
motion differs greatly from the standard for granting the instant

---

[3] As such, the Court will not consider Defendants' arguments based on
<u>Weiss v. Coca-Cola Bottling Co. of Chicago</u>, 990 F.2d 333 (7th Cir. 1993);
<u>Corbitt v. Home Depot U.S.A., Inc.</u>, 573 F.3d 1223, 1240 (11th Cir. 2009);
<u>Adusumilli v. City of Chicago</u>, 164 F.3d 353 (7th Cir. 1998); <u>Gupta v. Florida
Bd. of Regents</u>, 212 F.3d 571 (11th Cir. 2000);

motion to dismiss, the Court finds that none of the cited cases apply to the instant motion.

A plaintiff's "burden on a motion to dismiss is to sufficiently plead a Title VII-based hostile work environment claim. Whether the evidence ultimately bears out defendant's contention that plaintiff has failed to establish a prima facie hostile work environment claim is not before the Court." E.E.O.C. v. Jamal & Kamal, Inc., No. 05-2667, 2006 WL 285143, *2 (E.D. La. Feb. 7, 2006) (Zainey, J.) In Jamal & Kamal, Inc., the EEOC alleged that the plaintiff's manager engaged in

> unwelcome and offensive sexual overtures, the initiation of graphic, sexually-oriented conversations, and touching and rubbing. The complaint indicates that "these practices were compounded by frequent manifestations of offensive, humiliating, gender-based hostility that were perpetuated by the same manager and directed toward [plaintiffs] and other[s]." The EEOC's complaint also states that the manager made "repeated references in front of other restaurant employees and patrons about [plaintiffs'] breasts" and repeated referred to them as "freaks," a contemporary, sexual slang term, and "whores."

Id. The court found these allegations sufficient to satisfy the plaintiff's burden on a motion to dismiss. Likewise, in the present matter, the Court finds that Stewart alleges facts sufficient to state a claim. Stewart alleges that Caton lifted her shirt and touched her breasts, installed cameras to look down her shirt, and made repeated comments of a sexual and/or

derogatory nature.

**b. Retaliation Claim**

Stewart contends that she states a Title VII claim against Modern for retaliation. To establish a *prima facie* retaliation claim, Stewart must demonstrate: "(1) that she engaged in an activity protected by the statute; (2) that she experienced an adverse employment action following the protected activity; and (3) that a causal link existed between the protected activity and the adverse employment action." <u>Evans</u>, 246 F.3d at 352.

In her complaint, Plaintiff alleges that she engaged in a protected activity when she filed a charge with the EEOC, that she was terminated immediately, and that her filing of the charge caused her termination. Given the proximity of the termination to the charge, it is reasonable to infer at this stage of the litigation that Stewart's charge caused her termination. Moreover, Defendant does not challenge or even mention the retaliation claim in his motion beyond stating that he disputes the factual allegation that Stewart was involuntary terminated. Nevertheless, given that the Court must accept all well-pleaded allegations as true for the purposes of the instant motion, the Court finds that Stewart has pleaded enough facts to state a retaliation claim against Modern.

18

### c. Constructive Discharge

Defendants assert in their reply memorandum that Stewart should be barred from making claims of constructive discharge because she never raised this issue in her EEOC charge and because she fails to allege sufficient facts to sustain this claim. The Court agrees that Stewart never mentioned constructive discharge in her EEOC charge or in her Complaint, but the Court also finds that Stewart makes no such claim in opposing this motion either. Stewart only alleges that she was actually discharged on November 29, 2012. The only other allegation in Stewart's complaint that could possibly be construed as "constructive discharge" would be the allegation that her physician stated that she should not return to work because of her intolerable work environment. (Compl., Rec. Doc. 1, ¶ 30) This, however, appears to speak more to the severity of the physical manifestations of Stewart's alleged emotional distress. Therefore, Defendants' constructive discharge argument appears to be irrelevant to the instant proceedings.

## B. State Law Claims

Stewart asserts state law claims for discrimination under the Louisiana Employment Discrimination Law and for various torts, including battery, intentional infliction of emotional

distress, and negligent infliction of emotional distress.

**1. Claims under the Louisiana Employment Discrimination Law**

Defendants assert in their reply memorandum that Caton may not be held individually liable under the Louisiana Employment Discrimination Law because he did not compensate Stewart, but rather Modern compensated her. See La. R.S. 12:303(2); <u>Dejoie v. Medley</u>, 9 So.3d 826, 831 (the source of funds used to compensate the employee is essential to determining who the employer is under La. R.S. 12:303(2)). The Court agrees with this argument; therefore, Stewart's claims under the Louisiana Employment Discrimination Law purportedly brought against Caton individually must be dismissed. Stewart does, however, state a claim against Modern under the Louisiana Employment Discrimination Law for the reasons discussed below.

Defendants assert that Stewart has failed to state a claim under the Louisiana Employment Discrimination Law because the statute only applies to employers who employ "twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." La. R.S. § 23:302(2) (West 2012). Defendants assert that Stewart's complaint only alleges that Modern employed seventeen employees, thus all claims under this statutory

provision must be dismissed. Stewart urges the court to view Modern and Shore as a single employer, or, in the alternative, to view the independent contractors used by Modern as employees for the purposes of this motion. Defendants oppose this argument, arguing in their reply memorandum that Stewart cannot bring up new facts, such as her allegation that Shore and Modern are a single employer, because she did not include Shore in either of her Complaints. Defendants also oppose Stewart's application of the test used in Schweitzer to determine whether two companies are a single employer.

### a. "Single Employer"

While the Plaintiff is correct in her assertion that "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer," the Court finds no facts in the complaint that support this claim.[4] Schweitzer, 104 F.3d at 763 (internal citation omitted).

In Stewart's **complaint**, she alleges that Modern has over 300

---

[4] To make this determination, the Fifth Circuit has adopted the four part Trevino test, which considers "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control," wherein the second factor "has traditionally been most important." Schweitzer, 104 F.3d 761 at 764. In fact, courts often refine the four-part test "to the single question of which entity made the final decisions regarding employment matters related to the person claiming discrimination." Id. (internal citations omitted).

employees with many being falsely labeled as independent contractors, but makes no mention of Shore. Stewart's complaint makes inconsistent allegations regarding Kristi Yates's role —labeling her as Caton's assistant, co-supervisor, employee, and paramour at different times— but never alleges that Yates is the owner of Shore or any other company related to Modern. Conversely, in her **opposition**, Stewart contends that, although Modern only has seventeen employees, it has over three-hundred other workers employed on a contract basis through Shore.[5]

The Court may not consider the new allegations set forth in Stewart's opposition to the instant motion. <u>Roebuck v. Dothan Sec., Inc.</u>, No. 12-60649, 2013 WL 697383, *4 (5th Cir. 2013) (slip copy). Therefore, based on the allegations contained in the complaint alone, the Court cannot find that Modern and Shore are a "single employer" for the purposes of applying the Louisiana Employment Discrimination Law.

**b. Independent Contractors**

Plaintiff alleges in her complaint that Modern engages the services of over three hundred workers who, although considered

---

[5] Plaintiff alleges in her opposition that Kristi Yates, owner of Shore, is the vice-president of Modern as well as the fiancee of Caton. Plaintiff states that Yates and Caton share an office building and a single office therein, as well as phone lines, servers, and a kitchen. Plaintiff also argues that Shore "performs all of its services on behalf of and at the direction of" Modern. (Pl.'s Opp., Rec. Doc. 27, p. 14)

independent contractors within Modern, should be considered "employees" for the purposes of analyzing a claim under the Louisiana Employment Discrimination Law. The Fifth Circuit has adopted a hybrid test "which considers the 'economic realities' of the work relationship as an important factor in the calculus, but which focuses more on 'the extent of the employer's right to control the 'means and manner' of the worker's performance.'" Mares v. Marsh, 777 F.2d 1066, 1067 (5th Cir. 1985) citing Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C.Cir.1979). The factors to consider in this analysis are:

> (1) ownership of the equipment necessary to perform the job; (2) responsibility for costs associated with operating that equipment and for license fees and taxes; (3) responsibility for obtaining insurance; (4) responsibility for maintenance and operating supplies; (5) ability to influence profits; (6) length of the job commitment; (7) form of payment; and (8) directions on schedules and on performing work.

Arbaugh, 380 F.3d at 226 (5th Cir. 2004).[6]

Plaintiff alleges that the workers are "hourly employees" who "supply no materials or tools of their own" and "are directly

---

[6] In her opposition, Stewart urges the Court to apply this test, but she appears to apply it as an alternative to or in conjunction with the "single employer" test discussed above. The Court notes that while this test and the single employer test are similar, they are not to be used interchangeably. Schweitzer, 104 F.3d at 764. This hybrid test is only used to determine if the three hundred independent contractors that Stewart alleges work for Modern are "employees," and it is not used to determine whether Shore's workers may be included as Modern's employees under a single employer theory. See Id.

supervised, directed and controlled by [Caton] and [Modern]."
(Pl.'s Complt., Rec. Doc. 1, ¶ 20) These allegations, taken as
true, are sufficient to overcome the instant motion to dismiss.

   The Court does, however, find it problematic that Plaintiff
presents more allegations in her opposition to the instant motion
that, at best muddle, and, at worst, contradict the allegations
in her complaint. Specifically, Stewart states for the first time
in her opposition that these 300 workers are employed by Shore,
not Modern. The Court does not consider facts alleged only in the
opposition to a motion to dismiss; but, if Plaintiff has
discovered more information that would render her initial
complaint incomplete or untrue, she should amend her complaint at
this early stage of litigation to reflect such new information.

   **2. State Law Tort Claims**

      **a. Claims Against Caton Individually**

         **i. Battery**

   "A battery is a harmful or offensive contact with a person,
resulting from an act intended to cause the plaintiff to suffer
such contact ." Landry v. Bellanger, 2002-C-1443, (La. 2003); 851
So.2d 943, 949 (internal citations omitted). Stewart alleges that
Caton lifted her blouse and touched her breasts. These facts,
taken as true, are sufficient to state a claim for battery under

Louisiana state law.

### ii. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a plaintiff to show:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

White, 585 So.2d at 1209. Plaintiff must show that Caton's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.

Taking Stewart's allegations as true, she states a claim for intentional infliction of emotional distress. While a jury may later find that Caton's statements and actions were within the "bounds of decency," determining if Stewart will prevail on the merits is not the function of the instant 12(b)(6) motion. At the current stage of litigation, Stewart states enough facts to overcome the instant motion to dismiss.

### iii. Negligent Infliction of Emotional Distress

Plaintiff asserts that her state law claims must not be dismissed because she states a claim for negligent infliction of emotional distress under <u>Duncan</u>. 88 So.3d at 707-08. <u>Duncan</u> requires Stewart to prove "that (1) the defendant's conduct is negligent and (2) such conduct caused mental disturbance accompanied by physical injury, illness, or other physical consequences." <u>Id</u>. Defendants assert in their reply memorandum that all negligence claims against an employer must be remedied through worker's compensation, therefore Stewart's negligent infliction of emotional distress claim must be dismissed. <u>Attardo v. Brocato</u>, 96-1170 (La. App. 4 Cir. 2/5/97), 688 So. 2d 1296, 1297 <u>writ denied</u>, <u>Attardo v. Salvador</u>, 97-0584 (La. 4/18/97), 692 So. 2d 453 (exclusive remedy against [employer] for any such work related damages falls under worker's compensation unless she can show that she was injured as the result of an intentional act by [her employer]."); <u>Gilpin v. Elmer Candy Corp.</u>, No. 99-1475, 2000 WL 713195, *3 (E.D. La. June 2, 2000) ("a claim for negligent infliction of emotional distress arising out of the course and scope of employment is barred by the exclusive remedy rule of worker's compensation law.").

The Court agrees with Defendants that this claim must be

dismissed because Stewart's exclusive remedy for workplace negligence is in worker's compensation. Therefore, Defendants' motion to dismiss must be granted as to Stewart's negligent infliction of emotional distress claim.

### b. Claims Against Modern

Stewart asserts that her state law claims must not be dismissed because Modern is vicariously liable for Caton's tortious conduct. Under Louisiana law, "an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment." Baumeister v. Plunkett, 95-2270, (La. 1996); 673 So. 2d 994, 996. The Supreme Court of Louisiana outlined the following factors to be considered in holding an employer liable for an employee's actions:

> (1) whether the tortious act was primarily employment rooted;
> (2) whether the act was reasonably incident to the performance of the employee's duties;
> (3) whether the act occurred on the employer's premises; and
> (4) whether it occurred during the hours of employment.

Id. at 996-97. It is not necessary for all four factors to be met for liability to be found. Baumeister, 673 So. 2d at 997. However, "[a]n employer is not vicariously liable merely because his employee commits an intentional tort on the business premises

27

during working hours." Id. at 996 (internal citation omitted). Rather, for vicariously liability to attach, the employee must be "acting within the ambit of his assigned duties and also in furtherance of his employer's objective." Id. (quoting Scott, 415 So.2d at 329). Actions taken for "purely personal considerations entirely extraneous to the employer's interest" do not impute liability on the employer, even when the conduct occurs at work. Baumeister, 673 So. 2d at 998 (citing McClain v. Holmes, 460 So. 2d 681, 684 (La.App. 1 Cir. 1984) writ denied, 463 So. 2d 1321 (1985)).

For example, in Baumeister, the court found that a supervisor's sexual assault of one of his subordinates, where a superior went into the nurse's lounge, said nothing, and sexually assaulted a nurse, was not in the course and scope of the technician's employment "even in a minor respect." Id. The court found that the attack was motivated by personal interests and he did not connect the assault to the employee's job in any way. Id. (noting that, while this sexual assault was not within the course and scope of the tortfeasor's employment, the court did not adopt a rule blanketly labeling all sexual assaults as "personal" in nature, nor did they adopt a "motivation test" for the purposes of determining vicarious liability.)

When the alleged tortfeasor is owner of the employer entity, "[t]he line between 'business' and 'personal' activity is often a hazy one," and "there is no black letter rule on when liability should attach in such situations." <u>Ermere v. Hartford Ins. Co.</u>, 559 So. 2d 467, 477 (La. 1990). Courts often impose vicarious liability, however, when "the conduct in question was at least partially motivated by an intent to serve the interests of the business." <u>Ermert</u>, 559 So. 2d  at 477. The discretion to find vicarious liability is broad in such circumstances, however it must be borne in mind that "[o]ne of the advantages of creating a separate entity for the operation of the enterprise is that the business enterprise is not liable for all of the torts of its owner."

With these principles in mind, the Court finds that Stewart alleges sufficient facts to find it plausible that Modern will be vicariously liable for Caton's conduct. Moreover, Defendants did not address this claim in their motion to dismiss.

## C. Sufficiency of Complaint

Defendants argue that they cannot adequately defend this case because Stewart's allegations do not satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 8. Specifically, Defendants complain that Stewart did not state the

29

date on which Caton allegedly touched her breast. In making this argument, Defendants point to a case from the Northern District of Illinois wherein the court held that a complaint alleging in its entirety that "On or about January 27, 1984, Plaintiff, Jonah Oxman, was terminated by Defendant WLS-TV on the basis of his age which was 60," was sufficient to state a claim. Oxman v. WLS-TV, 595 F. Supp. 557, 562 (N.D. Ill. 1984). Apparently, because the Oxman complaint contains a date, Defendant takes that to mean all complaints must include a date. This argument is completely without merit. While this Court is not bound by the decisions of a district court in a different circuit, it is clear that, if this *sentence* states a claim, then Stewart's twenty page Complaint, which details her employment, her termination, and the harassing conduct, is sufficient to state a claim, despite the fact that she does not include the specific date of one of the events described in her Complaint.

Accordingly,

IT IS ORDERED that Defendants' **Motion to Dismiss (Rec. Doc. 20)** is **GRANTED** inasmuch as Plaintiff brings (a) claims under the Louisiana Discrimination Law individually against Defendant Caton, and (b) claims for negligent infliction of emotional distress.

30

**IT IS FURTHER ORDERED** that Defendants' **Motion to Dismiss (Rec. Doc. 20)** is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend her complaint to remedy the unclear allegations regarding Shore Enterprises, discussed above.

New Orleans, Louisiana this 16th day of August, 2013.


_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT